UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JASON PHILLIPS,

             Plaintiff,          CIVIL ACTION NO.:

v.                                       6:17-cv-252-Orl-41KRS

BRIGHT HOUSE NETWORKS, LLC
D/B/A CHARTER SPECTRUM,

             Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, JASON PHILLIPS (the "Plaintiff"), by and through his undersigned counsel, sues Defendant, BRIGHT HOUSE NETWORKS, LLC D/BA/ CHARTER SPECTRUM, (hereinafter referred to as "Spectrum" or "Defendant") and alleges:

### JURISDICTION AND VENUE

1. This action arises out of Defendants' repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and repeated violations of Plaintiff personal privacy by the Defendant and its agents in their illegal efforts to collect a consumer debt.

2. Original and supplemental jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1367.

3. Venue is proper in this Court in that Defendants transact business here and a substantial portion of the acts giving rise to this action occurred here.

## PARTIES

4. The Plaintiff, JASON PHILLIPS, is a natural person and resident of the City of Orlando, Orange County, Florida

5. The Defendant provides TV, Internet and Voice services to more than 24 million customers throughout the United States and in Florida.

6. The Defendant's corporate headquarters are in Stamford, Connecticut. Defendants are, and at all times mentioned herein were, corporations and "persons" as defined by 47 U.S.C. § 153(10).

7. The Defendant completed its $71 billion acquisition of Bright House Networks ("Bright House") on or about May 18, 2016.

8. At the time the Defendant acquired Bright House, the Plaintiff was a customer of Bright House.

## . FACTUAL ALLEGATIONS

9. On or about October 9, 2015, the Plaintiff visited, in person, the Bright House Network customer service location at 1906 South Semoran Boulevard in Orlando, Florida. The purpose of the visit was to attempt to switch out a damaged modem. At that time, the Plaintiff was informed that the modem could not be switched out and that Plaintiff needed to schedule a service appointment. In the process of scheduling the appointment, the customer service representative asked if the Plaintiff could be reached on the phone number the Plaintiff had on file which was 407-xxx-7474. The Plaintiff explained to her that number was no longer in service. The customer service representative then informed the Plaintiff that that he must provide a phone number so that the service technician could contact me on the way to his home.

10. At that time, the Plaintiff explicitly told the customer service representative that he did not want Bright House to use his cellular phone number (407-xxx-7183) for anything other than the service technician to contact him in route to replace the modem on the next day. The Plaintiff never gave prior express consent to Bright House to call his cellular phone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.

11. In or around June of 2016, Spectrum began placing telemarketing calls Plaintiff's cellular telephone, number 407-XXX-7183.

12. Spectrum caused calls to Plaintiff's cellular telephone by using an automated telephone dialing system ("ATDS") and/or an artificial or prerecorded voice ("Robocalls"). When Plaintiff answered the calls from Bright House, he was met with a prerecorded message instructing him to return Bright Houses call or instructing the Plaintiff to call Bright House regarding his account. The prerecorded message is in a pre-recorded voice that states,

> "This is a courtesy call on behalf of Bright House Networks. Please call us back at 1-888-572-2109. We would like to discuss an important matter with you. Again, the number is 1-888-572-2109. Thank you for being a Bright House Network customer. Good-bye."

13. Upon calling the number(s) back, the call is then answered by a representative at for Spectrum communications. For example, on January 26, 2017, the Plaintiff called the 1-888-572-2109 number. Said call was forward to the Spectrum payment department and answered by Spectrum representative, who said his name was Damon. At the time, the call was made the Plaintiff account was current. The Plaintiff inquired as to why he was receiving calls when his account was current, and Damon informed the Plaintiff that the calls were placed "automatically".

14. The prerecorded, telemarketing calls made to the Plaintiff's cell phone directed him to contact Bright House by phone or to log in to his account at Bright House's website and encourages the Plaintiff to purchase Bright House's services.

15. The Plaintiff is not contractually obligated to pay for Bright House's services on a monthly basis.

16. The FCC provides: "The term telemarketing means the initiation of a telephone call or message for the purpose of **encouraging the purchase** or rental of, or investment in, property, goods, or **services**, which is transmitted to any person." (Emphasis added).

17. The purpose of the automated/pre-recorded calls to the Plaintiff's purchase Spectrum's internet, phone, and cable services.

18. On October 9, 2015, the Plaintiff explicitly told a Bright House customer service representative, in person, that he did not want Bright House to use his cellular phone number (407-xxx-7183) for anything other than for a service technician to contact him in route to replace the modem on the next day.

19. Again, on or about September 26, 2016, the Plaintiff notified Spectrum again regarding the automated calls to his cellular telephone made by Bright House.

20. Spectrum never placed the Plaintiff's cellular number on a call on a "do not call" list.

21. The undersigned never gave prior express written consent to Bright House to call his cellular phone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.

22. Despite Plaintiff's unequivocal requests, Bright House and Spectrum still caused calls to made to the Plaintiff using auto dialers/robocalls to Plaintiff's cellular telephone.

23. Spectrum may be vicariously liable under federal common law principles of agency for TCPA violations as a result of Santander's prerecorded calls made to my cellphone. *See Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV (S.D. Fla. May 16, 2014) (denying both plaintiff's and defendant's motions, noting "summary judgment on vicarious liability is appropriate only in cases where evidence of the relationship is clear and unequivocal") *citing Platypus Wear, Inc. v. Clarke Modet & Co., S.L.*, No. 06-20976, 2008 U.S. Dist. LEXIS 107078 at *10–16 (S.D. Fla. June 23, 2008) (denying summary judgment on vicarious liability where record was insufficiently developed regarding relationship of alleged wrongdoers, but contained indicia of control), adopted in relevant part, 2008 U.S. Dist. LEXIS 54132 (S.D. Fla. July 15, 2008).

24. That Spectrum's agents acting on Spectrum's behalf regularly collect on balances due for Spectrum's services. That an agent, acting on behalf of Spectrum, has direct access to Spectrum's confidential customer and billing information and customer account system. That an agent, acting on behalf of Spectrum, uses Spectrum's confidential customer and billing information to place the automated/pre-recorded calls to Spectrum's customers, like Mr. Phillips, on behalf of Spectrum. That Spectrum charges its customers, like Mr. Phillips, a collection fee of $20.00 for its' agent's collection activities, that include placing the automated/pre-recorded calls to its' customers like Mr. Phillips. That Spectrum's agents receive a commission from payments made as a direct result of Spectrum's agents collection activities. That Spectrum's agents are authorized to use the Spectrum trademark, logo, and name in collecting payments for Spectrum's customers, on "door-hangers" and on the automated phone calls. In fact, Spectrum's agents direct Spectrum's customers to visit Spectrum's website or to call Spectrum's payment center when in places the pre-recorded/autodialed calls to its Customer's like Mr. Phillips.

## COUNT I - VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTIONS ACT – 47 U.S.C. § 227, et seq.

25. The Plaintiff re-alleges and incorporates ¶¶ 1 – 24 above as if fully stated herein.

26. Spectrum is liable to the Plaintiff for violations of the Telephone Consumer Protection Act (hereinafter TCPA) of 47 U.S.C. § 277 (a) (1) and /or by using "an artificial or prerecorded voice as described in 47 U.S.C § 227 (b) (1) (A) without the prior consent within the meaning of the TCPA.

27. Pursuant to the TCPA and under the FCC's January 2008 Declaratory Ruling, the burden is on the violator of the statute to demonstrate that the undersigned provided express consent within the meaning of the statute.

28. At all times mentioned herein, Bright House called the Plaintiff on his cellular telephone by using an automated telephone dialing system ("ATDS") and/or an artificial or prerecorded voice ("robocalls").

29. On behalf of Spectrum, Bright House, who is now Spectrum, initiated telemarking calls by using an automated telephone dialing system or an artificial or prerecorded voice to call the Plaintiff's cellular telephone without his prior express consent.

30. Spectrum knew or should have known that Bright House, who is now Spectrum, was making telemarketing calls to the Plaintiff's cellular telephone on behalf of Spectrum; and Spectrum failed to take effective steps to force Bright House to cease that conduct."

31. The Plaintiff did not verbally provide his cellular telephone number or his consent to be called on that cellular telephone number to Spectrum or Bright House. Bright House did not make telephone calls to the undersigned cellular telephone "for emergency purposes" as described by 47 U.S.C. § 227 (b) (1)(A).

32. Spectrum and Bright House placed these non-emergency, telemarketing calls were placed using phone number 877-369-1344; 888-572-2109; 866-774-5081; and 1-888-289-8988 through the use of an automatic telephone dialing system or an artificial or prerecorded voice on the following dates and approximate times:

June 9, 2016, at 5:38 p.m.;

September 15, 2016, at 1:07 p.m.;

September 17, 2016, at 9:18 p.m.;

September 21, 2016, at 5:17 p.m.;

October 10, 2016, at 5:05 p.m.;

October 15, 2016, at 3:20 p.m.;

October 19, 2016, at 11:54 am;

November 2, 2016, at 12:33 p.m.;

December 2, 2016, at 3:44 p.m.;

December 5, 2016, at 1:55 p.m.;

December 5, 2016, at 7:21 p.m.;

January 11, 2017, at 9:27 a.m.;

January 23, 2017, at 10:28 a.m.;

January 23, 2017, at 3:41 p.m.;

January 23, 2017, at 8:15 p.m.;

January 24, 2017, at 3:40 p.m.;

January 26, 2017, at 8:32 p.m.; and

January 30, 2017, at 3:41. p.m.

33. Bright House and Spectrum placed these calls after the Plaintiff advised Bright House not to make such calls, a second time, on or about January of 2016. Accordingly, each call placed to the Plaintiff was made in knowing and/or willful violation of the TCPA and is subject to treble damages pursuant to 47 U.S.C. § 227(b)(3)(C).

34. The calls from Spectrum to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

35. As a result of each call made in negligent violation of the TCPA, the Plaintiff is entitled to an award of $500.00 in statutory damages for each call pursuant to 47 U.S.C. § 227(b)(3)(B).

36. As a result of each call made in knowing and/or willful violation of the TCPA, the Plaintiff is entitled to an award of treble damages in an amount of up to $1,500.00 pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

37. The Plaintiff has suffered and continues to suffer actual damages as a result of the Defendant's unlawful conduct.

38. As a direct consequence of the Defendant's acts, practices and conduct the Plaintiff suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration, and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court to enter a judgment in favor of the Plaintiff and against the Defendant for an award of actual damages; and award of statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) in the amount of $9,000.00; and if the Defendant's conduct is deemed willful, statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) in the amount of $27,000.00; and the costs associated with litigation.

## JURY TRIAL DEMANDED

39. The Plaintiff respectfully requests the Court to hold a jury trial on all issues so triable.

Respectfully submitted on this _10th_ day of _February_, 2017.

By: _/s/ J. Brian Phillips_

J. Brian Phillips, Esq.
Florida Bar No: 89841
J. BRIAN PHILLIPS, P.A. Attorney at Law
P.O. Box 621176
Orlando, FL 32862-1176
Tel. (407) 237-0192
serve@jbrianphillipsesq.com
Trial Counsel for the Plaintiff